IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAQUELINE W.,[1] | ) |
|                 Plaintiff, | ) No. 20 C 7095 |
| v. | ) Magistrate Judge Beth W. Jantz |
| KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,[2] | ) |
|                 Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Jaqueline W.'s application for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). For the reasons that follow, Plaintiff's motion for summary judgment [dkt. 17, Pl.'s Mot.] is denied, and the Commissioner's cross-motion for summary judgment [dkt. 22, Def.'s Mot.] is granted. The Court affirms the Commissioner's final decision.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi has been substituted for her predecessor.

# BACKGROUND

## I.    Procedural History

On April 30, 2018, Plaintiff filed a claim for DIB, alleging disability since March 30, 2018, due to stage 3 breast cancer, high blood pressure, Wolff-Parkinson Light Syndrome, and high cholesterol.  [Dkt. 14-1, R. 13, 198.]  Plaintiff's claim was denied initially and again upon reconsideration.  [R. 93-118.]  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 20, 2019.  [R. 35-83.]  Plaintiff personally appeared and testified at the hearing and was represented by counsel.  [R. 43-68.]  Vocational expert ("VE") Thomas Gusloff also testified.  [R. 68-82.]  On March 3, 2020, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act.  [R. 10-29.]  The Social Security Administration Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner.  [R. 1-6.]

## II.   The ALJ's Decision

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process.  [R. 14-15.]  The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 30, 2018.  [R. 15.]  Plaintiff had, however, accepted unemployment compensation during the second, third, and fourth quarters of 2018, and the ALJ acknowledged that "such acceptance shows that the claimant was actively applying for work, claimed to be available for work and held herself out to another agency to be able and willing to work during the adjudicative period." [Id.]  At step two, the ALJ concluded that Plaintiff had the following severe impairments: left breast cancer, remission, status post left mastectomy with axillary dissection; degenerative disc disease, lumbar; gluteal minimus tendinopathy; Wolff-Parkinson-White syndrome; coronary

2

artery disease, and status post angioplasty with stents. [R. 15-18.] The ALJ concluded at step three that her impairments, alone or in combination, do not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [R. 19-20.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with the following additional limitations:

> [S]he can alternate/change positions every 30 minutes for 1 to 2 minutes, while remaining at the workstation and no change in the work process; can use a hand-held assistive device for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes; can occasionally climb ramps and stairs, and never climb ladders, ropes or scaffolds; can frequently balance; occasionally stoop, kneel, crouch and crawl; occasionally reach overhead with her left upper extremity; frequently handle/finger, bilaterally; cannot perform production rate or pace work; and must avoid moving mechanical parts and unprotected heights.

[R. 20.] At step four, the ALJ concluded that Plaintiff would be able to perform her past relevant work. [R. 28.] At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that she is not disabled under the Social Security Act. [R. 28-29.]

## **DISCUSSION**

### **I.  Judicial Review**

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or

3

combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner and is reviewable by this Court. 42 U.S.C. § 405(g); *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.* at 327.

The ALJ has a basic obligation both to develop a full and fair record and to "build an accurate and logical bridge between the evidence and the result [so as] to afford the claimant

4

meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837; *see also Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

## II. Analysis

Plaintiff argues that the ALJ (1) failed to adequately evaluate the opinion of Plaintiff's treating orthopedist, (2) failed to properly assess Plaintiff's residual functional capacity, and (3) failed to sufficiently evaluate Plaintiff's subjective symptoms. [Dkt. 17, Pl.'s Mem. at 2-15; dkt. 24, Pl.'s Reply at 2-13.] For the reasons that follow, the Court affirms the ALJ's decision.

### The ALJ's Consideration of the Treating Orthopedic Specialist's Opinion

Plaintiff first argues that the ALJ failed to adequately evaluate the opinion of Dr. Kusuma, Plaintiff's treating orthopedist, in at least three ways: (1) failing to explain why Dr. Kusuma's opinion was not entitled to more weight despite acknowledging Dr. Kusuma's orthopedic expertise; (2) improperly characterizing the record evidence that the ALJ found inconsistent with Dr. Kusuma's opined limitations; and (3) failing to assess the evidence in the record that was consistent with the limitations found by Dr. Kusuma. [Dkt. 17 at 2-7.]

5

Dr. Kusuma's opinion, authored in October 2019, lists Plaintiff's diagnosis as "right L5-S1 disc herniation" with symptoms of right lower extremity radiculopathy with numbness and tingling that was worsening. [R. 1041.] Dr. Kusuma opined that Plaintiff could never twist, stoop, crouch, squat, climb ladders or stairs, or lift more than 10 pounds, but also opined that Plaintiff had "no limitations" in reaching, handling, or fingering. [R. 1043.] Importantly, Dr. Kusuma opined that Plaintiff was capable of low stress work and, despite needing the ability to shift positions at will and sometimes needing unscheduled breaks, her symptoms would not be severe enough to interfere with her attention and concentration causing her to be off task for any percentage of the workday. [R. 1041-44.] Dr. Kusuma also opined that Plaintiff would miss about four days of work per month. [R. 1044.] The ALJ found this opinion somewhat persuasive, but only to the extent it was consistent with Plaintiff's treatment records and the other evidence. [R. 25-26.]

As Plaintiff's claim for benefits was filed after March 17, 2017, the evaluation of medical opinion evidence is governed by 20 C.F.R. § 404.1520c. Under that regulation, the opinions of treating physicians are not entitled to special deference or controlling weight. Rather, opinions from any medical source are evaluated against certain factors, including 1) supportability; 2) consistency; 3) the source's relationship with the claimant, including length of time the source has treated the claimant, the frequency of examinations, and the purpose and extent of the treatment relationship, and whether the relationship was an examining one; 4) the source's specialization; and 5) other factors. 20 C.F.R. § 404.1520c. The "most important factors"—and the only factors that the ALJ is required to discuss in her decision—are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). In assessing supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical

6

opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). As to consistency, "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

As Plaintiff acknowledges, the ALJ recognized that Dr. Kusuma was an orthopedic expert and would be most familiar with Plaintiff's musculoskeletal condition. [R. 19; Dkt 17 at 2.] Still, Plaintiff faults the ALJ for not explaining why only partial weight was given to Dr. Kusuma's opinion given this specialized knowledge. [Dkt. 17 at 2-3.] This argument seems to suggest that special weight must be given to a specialist's opinion, or that additional explanation is required when a specialist's opinion is not given controlling weight. But the new regulations explicitly state that the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). While the opinion of a specialist "*may* be more persuasive about medical issues related to his or her area of specialty" than opinions from a medical source who is not a specialist, the regulation does not *require* that special weight be given. § 404.1520c(c)(4) (emphasis added). Moreover, under the current regulation, the ALJ is not required to even discuss the specialization of a particular medical source (though the ALJ *did* do so here). *See Bakke v. Kijakazi,* 62 F.4th 1061, 1069 (7th Cir. 2023) (for claim filed after March 27, 2017, ALJ was "not required to articulate exactly how he accounted for" a medical source's treating relationship with Plaintiff, "so long as he properly articulated his consistency and supportability analyses."). Here, the ALJ explained that she found Dr. Kusuma's opinion persuasive as far as it was supported by the objective medical record, and then proceeded to explain which limitations the ALJ believed were supported by the objective medical record. [R. 26.] And

7

indeed, an ALJ may permissibly reject a treating physician's opinion if it is internally inconsistent or inconsistent with other evidence. *See Connour v. Massanari*, 173 F. Supp. 2d 785, 795 (N.D. Ill. 2001), *aff'd sub nom. Connour v. Barnhart*, 42 F. App'x 823 (7th Cir. 2002). Plaintiff's argument that the ALJ was required to provide additional explanation for not fully deferring to Dr. Kusuma based on his specialization fails.

Plaintiff next argues that the ALJ's supportability and consistency analysis is flawed because the ALJ improperly characterized the record evidence that she relied on in finding parts of Dr. Kusuma's opinion in conflict with the record. Specifically, Plaintiff challenges the ALJ's characterization of her left arm neuropathy and lymphedema as "relatively mild," noting that the ALJ only cited two records from November 2018 referring to the lymphedema as minimal, slight, or mild, and pointing to additional records noting that Plaintiff experienced discomfort, swelling, and difficulty with movement due to lymphedema at other points in time. But Dr. Kusuma's opinion did not say anything about Plaintiff's left arm neuropathy and lymphedema—rather, the opinion lists Plaintiff's diagnosis as right L5-S1 disc herniation and mentions symptoms of radiculopathy with numbness and tingling in the right lower extremity only. [R. 1041.] In response to the form question asking whether Plaintiff had any significant limitations with reaching, handling, or fingering, Dr. Kusuma indicated that Plaintiff had "no limitations." [R. 1043.] Nonetheless, based on the other evidence in the record and Plaintiff's testimony, the ALJ did assess limitations of only frequent handling and fingering, only occasional reaching overhead with her left upper extremity, and no production rate or pace work. [R. 20.] Thus, Plaintiff's simultaneous arguments—that even greater limitations on reaching, handling, and fingering should have been assessed *and* that more weight should have been given to Dr. Kusuma's opinion—are inconsistent with one another and unpersuasive.

8

Plaintiff likewise argues that the ALJ put too much emphasis on the notes in Plaintiff's record indicating that her Eastern Cooperative Oncology Group (ECOG) performance status remained at 0 and 1 throughout her cancer treatment. [Dkt. 17 at 5.] This scale is used to evaluate a cancer patient's physical ability to care for themselves and participate in daily activities, with a status of 0 meaning fully active and able to carry on all pre-disease activities without restrictions and a status of 1 indicating no physically strenuous activity, but is ambulatory and able to carry out light or sedentary work (e.g. office work; light house work). [R. 26, *citing* R. 363, 373, 767, 772, 783, 791, 802, 841, 856, 870, 875, 924, 937, 951, 962, 984, 1014.] According to Plaintiff, the ECOG scores related only to her cancer diagnosis and did not account for Plaintiff's other impairments and how they affected her, so the ALJ should not have credited that evidence over Dr. Kusuma's opinion. [Dkt. 17 at 5.] But there is no evidence to support Plaintiff's narrow view of the ECOG assessments, and it is nonsensical to suggest that the orthopedic specialist's opinion here was somehow more comprehensive than Plaintiff's oncologist's real-time assessment of Plaintiff's functioning. This is especially so since Dr. Kusuma's opinion, labeled "Lumbar Spine Medical Source Statement," does not even mention Plaintiff's cancer diagnosis or any other impairments beyond L5-S1 disc herniation. [R. 1041-44.] To the extent that the ECOG scores the ALJ relied upon are inconsistent with Dr. Kusuma's opinion, it is the ALJ's role to decide a conflict between evidence from various medical sources. *See Connour v. Massanari*, 173 F. Supp. 2d 785, 795 (N.D. Ill. 2001), *aff'd sub nom. Connour v. Barnhart*, 42 F. App'x 823 (7th Cir. 2002). There is no reason to think Dr. Kusuma's opinion was inherently more comprehensive or more accurate than Plaintiff's oncologist's ECOG scores, and this Court must defer the ALJ's weighing of the evidence. *Id.*

Plaintiff further argues that the ALJ failed to consider evidence that was consistent with Dr. Kusuma's opinion, citing records from February, April and May 2019 documenting that Plaintiff had painful spinal range of motion, spinal tenderness, and back pain caused by the right L5-S1 disc herniation. [Dkt 17 at 3-4.] But the ALJ *did* acknowledge that Plaintiff had "been treated for low back pain radiating into her right leg and hip," and thoroughly reviewed the timeline of Plaintiff's pain, treatment, and improvement in this regard. [R. 23-24.] The ALJ noted that Plaintiff began seeing a pain management specialist in May 2019, and was given an epidural steroid injection the following month, which she reported improved her pain for about four months. [R. 24, 733.] The ALJ noted Plaintiff's report that by October 2019, her pain had worsened, but also noted that an injection had relieved her pain for an extended period. [R. 24, 26.] Indeed, at the hearing in October 2019, Plaintiff reported that her doctor had recommended she return to the pain management specialist for another steroid injection or back surgery to continue the pain relief. [R. 53-55.] Notably, the opinion of Dr. Kusuma at issue was authored in October 2019—after the first steroid injection had worn off, but before Plaintiff had returned to the pain specialist to receive another treatment. [R. 1041-44.]

This is not a situation, as Plaintiff suggests, where the ALJ ignored relevant evidence of Plaintiff's ongoing pain. [Dkt. 5-7.] "[A]n ALJ need not provide a complete written evaluation of every piece of testimony and evidence," and it is up to the ALJ to determine what weight to give the evidence. *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995). Here, the ALJ comprehensively discussed Plaintiff's diagnosis and pain history *as well as* the evidence that recent treatment had been effective at alleviating the pain for several months. [R. 24-26.] Moreover, in concluding that Dr. Kusuma's opined limitations were inconsistent with the record, the ALJ supported her conclusion with evidence that Plaintiff had just had several months of successful pain alleviation

10

with a steroid injection, [R. 26], which Plaintiff testified her doctor had recently recommended that she repeat. [R. 53-55.] The ALJ is entitled to consider and give weight to evidence of treatment that has been effective. SSR 16-3P, 2017 WL 5180304 at *7-8 (S.S.A. Oct. 25, 2017).

**The ALJ's Consideration of the Plaintiff's Residual Functional Capacity**

Plaintiff attacks the ALJ's residual functional capacity ("RFC") assessment, finding fault with the ALJ's determinations that Plaintiff could (1) frequently handle and finger bilaterally and (2) could perform sedentary work requiring sitting for 6 hours in an 8-hour workday. [Dkt. 17 at 7-12.] A claimant's RFC represents the maximum she can do despite her limitations. 20 C.F.R. §404.1545(a)(1); SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996). An ALJ must base a claimant's RFC on all relevant evidence in the record, including the claimant's medical history and findings, the effects of treatment, reports of daily activities, and medical opinions. 20 C.F.R. §404.1545(a)(3); SSR 96–8p, 1996 WL 374184, at *5. When determining a claimant's RFC, an ALJ must consider all medically determinable impairments, including those that are not severe. *Craft*, 539 F.3d at 676. An ALJ must also consider all the effects and limitations resulting from those impairments. *See Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014) ("When determining an individual's RFC, the ALJ must consider all limitations that arise from medically determinable impairments."); *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) ("An ALJ must consider the combined effects of all of the claimant's impairments; even those that would not be considered severe in isolation.").

Plaintiff asserts that much of the evidence in the record does not reflect that Plaintiff could tolerate frequent handling during the workday due to neuropathy and lymphedema in her left arm. [Dkt. 17 at 8.] "Handling" is defined as seizing, holding, grasping, turning, or otherwise working primarily with the whole hand or hands, which are activities required in almost all jobs

11

and consequently, according to the Social Security Administration's own rules, significant limitations in these functions may eliminate a large number of occupations that a claimant could otherwise perform. *See* SSR 85-15 (S.S.A. 1985). "Frequent" handling has been defined as performing the movement only one-third to two-thirds of the time. *Id.* The vocational expert here testified that Plaintiff would not be able to perform her past work if she was further limited to only occasional handling. [R. 76-77.]

While there was evidence in the record that Plaintiff's cancer treatment caused swelling in her left arm and neuropathy in her left hand that persisted for several months, which the ALJ acknowledged [R. 16, 21], there also was evidence that these limitations were expected to improve, [R. 931]. Not only that, but there was also evidence that the neuropathy *had* improved; as described above, Plaintiff's own orthopedic specialist opined in October 2019 that Plaintiff had no limitations at all in reaching, handling, or fingering. [R. 1041-44.] The ALJ's decision to assess greater limitations than Plaintiff's own orthopedist assessed by limiting Plaintiff to only handling one- to two-thirds of the workday demonstrates that, contrary to Plaintiff's argument, the ALJ *did* consider the record evidence and Plaintiff's own testimony about challenges with gripping and handling. [R. 20.]

As for the RFC determination that Plaintiff could perform sedentary work, Plaintiff argues that "much of the record" did not support Plaintiff's ability to sit for 6 hours in an 8-hour workday. [Dkt. 17 at 9-12.] Plaintiff points to the opinions of her treaters, all of which opined that Plaintiff could not sit for more than 2 hours total in a workday. [Id. at 9-10, citing R. 1038, 1042, 1046.] The ALJ discussed these opinions and found that they were not supported by any objective evidence. [R. 25-26.] The ALJ found that they were inconsistent with treatment notes from the same period which assessed Plaintiff as either fully active, able to carry on all pre-

12

disease activities, or restricted from physically strenuous activity but still ambulatory and able to carry out light or sedentary work. [R. 25-26.] Nonetheless, the ALJ incorporated a limitation in the RFC to account for Plaintiff's lower back and right lower extremity pain by allowing her to switch positions for 1-2 minutes every 30 minutes. [R. 20.]

Rather than pointing to any objective evidence in the record supporting the treating physicians' opinions by showing that Plaintiff had pain while sitting for more than 30 minutes at a time, Plaintiff instead points to web articles stating generally that some people with Plaintiff's conditions have difficulty with sitting. [Dkt. 17 at 10-11.] But it was Plaintiff's burden to show that *her* diagnoses caused symptoms that limited her ability to perform work-related activities. *See Dickinson v. Berryhill*, No. 1:16CV185, 2017 WL 2492614, at *5 (N.D. Ind. June 9, 2017) (plaintiff's citation to the Mayo Clinic's website listing common symptoms of plaintiff's diagnosis did not compensate for her failure to carry burden to show that she experienced significant limitations due to the impairment). Plaintiff cannot step in on appeal and provide an explanation for her treating source's opinions which the treaters themselves did not provide, as the ALJ is permitted to reject a treating source opinion that is not adequately supported, 20 C.F.R. § 404.1520c(c)(1), and this Court is not permitted to reweigh the evidence. *Beardsley*, 758 F.3d at 836-37. Moreover, while Plaintiff herself testified that she could sit for 30 minutes at a time, she now attempts to recast that testimony by arguing that she did not testify that she could sit for 30 minutes *repeatedly* throughout the workday. [Dkt. 17 at 10.] But neither citation to statements from websites outside the record nor Plaintiff's after-the-fact reframing of her testimony can compensate for the lack of support for sitting limitations in the record before the ALJ.

13

**The ALJ's Assessment of Plaintiff's Subjective Symptoms**

Plaintiff's final argument is that the ALJ erred in her treatment of Plaintiff's reports of subjective symptoms by (1) failing to discuss whether Plaintiff's reported activities of daily living were consistent with the symptoms and limitations she described; (2) discounting Plaintiff's statements about the severity of her arm and leg swelling because she did not wear her compression sleeve at night and did not wear one at all for her leg; and (3) discounting her subjective allegations because she continued to smoke heavily in 2018, indicating that her cardiac symptoms were not particularly troubling. [Dkt. 17 at 12-15.] As discussed above, the ALJ incorporated several limitations into the RFC relating to Plaintiff's fatigue and arm and leg concerns, such as limiting Plaintiff to sedentary work with no production rate or pace work and with limitations on reaching, handling, and fingering. [R. 26-27.]

While the ALJ is required to consider a claimant's report of their subjective symptoms, including the impact on a claimant's activities of daily living, the ALJ is not required to adopt those reports wholesale if the ALJ does not find them consistent with the record evidence. SSR 16-3P, 2017 WL 5180304 at *8 (S.S.A. Oct. 25, 2017) ("We may or may not find an individual's symptoms and related limitations consistent with the evidence in his or her record."). The ALJ is, however, required to explain which of an individual's symptoms is found consistent or inconsistent with the evidence in the record. *Id.*; *Pepper v. Colvin,* 712 F.3d 351, 367 (7th Cir. 2013) (explaining that the ALJ must justify her assessment with "specific reasons supported by the record.") The Court will overturn the ALJ's subjective symptom evaluation only if it is "'patently wrong,' meaning it lacks explanation or support." *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) (quoting *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014)).

14

The Court finds that the ALJ sufficiently explained and supported her analysis of Plaintiff's subjective symptoms. The ALJ acknowledged Plaintiff's testimony about significant limitations in her activities of daily life and found that her medically determinable impairments could reasonably be expected to cause the alleged symptoms, but concluded that the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence. [R. 21-22.] The ALJ went on to explain that, while Plaintiff had required extensive treatment for breast cancer, the treatment was completed in less than 12 months and cancer had not recurred. [R. 22-23.] The ALJ acknowledged Plaintiff's reports that she still became fatigued by activities such as shopping or dressing and needed to rest after minimal physical activity, concluding that Plaintiff should be limited to sedentary work with no production rate or pace work. [R. 26-27.] The ALJ explained this decision with reference to the ECOG status levels of 0 and 1 assessed by her doctors, as discussed above, which indicated that Plaintiff retained the ability to participate in at least sedentary office work. [R. 27-28.] To the extent Plaintiff's cardiac conditions, rather than cancer and cancer treatment, caused the fatigue she described in her testimony, the ALJ again explained that the limitation to sedentary work accounted for this while also explaining that Plaintiff's decision to continue smoking indicated that the cardiac symptoms were not particularly troubling to her. [R. 27-28.]

Plaintiff takes issue with the ALJ's comment regarding her being a daily smoker, citing to other medical records referring to Plaintiff as a *former* smoker and arguing that the ALJ did not cite any evidence that a reduction in Plaintiff's smoking would have rendered her impairments non-severe. [Dkt. 17 at 14-15.] But again, the ALJ already had credited Plaintiff's reports of fatigue and shortness of breath and incorporated those limitations into the RFC by limiting Plaintiff to sedentary work, so even if this comment was erroneous, it was harmless.

15

*McKinzey v. Astrue,* 641 F.3d 884, 892 (7th Cir. 2011) ("[W]e will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result.").

Noting that Plaintiff experienced physical side effects of lymphedema from the cancer treatment, the ALJ explained that the record evidence showed that the lymphedema was treated with use of a compression sleeve, which was noted to be helping, and did not cause more than minimal work-related limitations. [R. 16.] Likewise, the ALJ acknowledged Plaintiff's reports of neuropathy in the left extremity but also noted medical evidence showing that her objective sensory examinations ranged from normal, to grade 1 or only trace residual peripheral neuropathy in the fingertips of her left hand. [Id.] While concluding that the medical record overall did not suggest that either the neuropathy or lymphedema were severe, the ALJ still assessed limitations on reaching overhead with the left upper extremity (only occasionally) and on handling and fingering (only frequently). [Id.]

The ALJ also noted that Plaintiff had dropped out of physical therapy for her upper extremity symptoms after only a few sessions, and explained her rationale that if Plaintiff's symptoms were as limiting and severe as Plaintiff alleged, the ALJ expected that Plaintiff would have been willing to avail herself of further treatment. [R. 27.] Plaintiff takes issue with this rationale, arguing that the ALJ is not permitted to rely on speculation. [R. 27; Dkt. 17 at 14.] The regulations, however, specifically permit this type of inference. *See* SSR 16-3P, 2017 WL 5180304 at *9 (S.S.A. Oct. 25, 2017) ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record."). The ALJ was likewise entitled to make a similar analysis with regards to

16

Plaintiff's decisions not to wear her compression sleeve on her arm at night or to not wear one at all on her leg. [R. 27.]

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [dkt. 17, Pl.'s Mot.] is denied, and the Commissioner's cross-motion for summary judgment [dkt. 22, Def.'s Mot.] is granted. The Court affirms the Commissioner's final decision.

**SO ORDERED.**

Date: 7/31/23

_____
BETH W. JANTZ
United States Magistrate Judge